**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RENSSELAER POLYTECHNIC INSTITUTE,**

        **Plaintiff,**　　　　　　　1:05-CV-302
　　　　　　　　　　　　　　　　　　　　　(GLS\RFT)

        **v.**

**VARIAN, INC.,**

        **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Pattison, Sampson Law Firm<br>22 First Street<br>Troy, NY 12181-0208 | Thomas E. Lavery, Esq. |
| **FOR THE DEFENDANT:** | |
| Hiscock, Barclay Law Firm<br>One Park Place<br>300 South State Street<br>Syracuse, NY 13202-2078 | Christopher J. Harrigan, Esq.<br>Douglas J. Nash, Esq.<br>Robert A. Barrer, Esq. |

**Gary L. Sharpe
U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Rensselaer Polytechnic Institute ("RPI") has moved for reconsideration of the court's October 18, 2007 oral decision dismissing its complaint. The motion for reconsideration is granted; however, for the reasons that follow, the court grants summary judgment in favor of Varian to the extent it seeks dismissal of RPI's case.

## II. Facts and Procedural History

The relevant facts are recited in the court's October 18, 2007 oral decision and order, (*see* Dkt. No. 54), and will not be repeated in detail here. In summary, RPI and Varian entered into a purchase order agreement whereby Varian agreed to provide RPI a nuclear magnetic resonance ("NMR") system with a passive VectorShield for $2,250,000. The NMR was to be the center piece of a new biotechnology building RPI was constructing. Pursuant to the terms of this order RPI paid Varian $900,000 dollars up front. Subsequently, RPI cancelled the order and requested the return of its $900,000 dollar payment. Varian returned all but $367,000 of such payment to RPI, the unreturned portion representing expenses Varian alleges it was unable to mitigate after RPI's cancellation.

RPI then filed suit asserting that: 1) Varian was "indebted to [RPI] for money 'had and received' in the amount of $900,000 with interest;" 2) RPI

2

properly cancelled the purchase order under its terms; 3) RPI properly rejected the NMR system and rescinded the purchase order under U.C.C. § 2-711 because Varian misrepresented the appearance of the NMR system; 4) RPI properly rejected the NMR system and rescinded the purchase order under U.C.C. § 2-711 because Varian failed to establish to the reasonable satisfaction of RPI that the NMR system would fit within the allotted space; and 5) "Varian breached its implied warranty of fitness for a particular purpose when it attempted to supply an instrument that would not properly fit in the space [RPI] had allotted for it."  (See Compl.; Dkt. No. 1.)

     Both parties moved for summary judgment.  (See Dkt. Nos. 31, 32.) Varian argued that RPI had no right to cancel the purchase order, and RPI's doing so constituted a breach of contract entitling Varian to $367,000 in damages under its counter claim.  It was further contended that RPI had no claim to relief under the UCC, and that RPI's claim for money "had and received" was barred by the existence of a contract between the parties. For its part, RPI sought an order from the court holding that the purchase order's terms allowed RPI to terminate the contract and precluded Varian from seeking damages against RPI, and that Varian had suffered no damages in any event.

3

In addressing the motions, the court found that the purchase order constituted a contract between the parties, that RPI breached the contract by cancelling it in violation of its terms, and that Varian was therefore not required to reimburse the $367,000 dollars in direct damages it incurred as a result of RPI's breach. (Dkt. No. 54.) The court then denied RPI's motion for summary judgment, dismissed its complaint in its entirety, and denied Varian's motion for summary judgment as moot. (Dkt. No. 54.) RPI subsequently filed this motion for reconsideration. (Dkt. No. 55.)

### III. **Standard of Review - Motion for Reconsideration**

The standard for granting a motion for reconsideration is strict. Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Courts in the Northern District of New York have recognized three possible grounds upon which a motion for reconsideration may be granted: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *See, e.g.,*

4

*C-TC 9th Ave. P'Ship v. Norton Co. (In re C-TC 9th Ave. P'Ship),* 182 B.R. 1, 3 (N.D.N.Y. 1995) (citations omitted).

## IV. Discussion

RPI does not appear to object to the court's prior findings that there was a contract between the parties which RPI breached, or to the corresponding dismissal of its first and second causes of action. Rather, RPI argues that it was clear error for the court to deny both motions for summary judgment and yet dismiss the complaint in its entirety. RPI submits that it has created a triable issue of fact as to whether it rightfully rejected the NMR system and rescinded the contract under U.CC. § 2-711(1), and whether Varian breached its implied warranty of fitness for a particular purpose. Thus, RPI seeks to have the court reinstate its third, fourth and fifth causes of action.

Without objecting to the court's prior findings, it is difficult to see how RPI can establish that it rightfully rescinded the contract under § 2-711(1), or prove Varian breached its implied warranty of fitness for a particular purpose. Nevertheless, to the extent the court denied both motions for summary judgment and dismissed plaintiff's complaint, it was in error. As such, the motion for reconsideration is granted and the court addresses the

5

validity of RPI's third, fourth and fifth causes of action.

RPI's third and fourth claims are asserted under N.Y. U.C.C. § 2-711(1) which provides:

> [w]here the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (Section 2-612), the buyer may cancel and ... recover[] so much of the price as has been paid.

Under this provision, RPI contends that its cancellation of the contract was appropriate because it suspected that the VectorShield's "appearance" would be different than understood when the system was initially ordered. RPI further claims that it rightly rescinded the contract because it had reason to believe that the VectorShield would not fit into the biotechnology building being constructed to house it.

These arguments clearly focus on RPI's insecurity as to Varian's prospective ability to perform under the contract. Thus, the propriety of RPI's rescission under § 2-711 must be examined through the lens of U.C.C. § 2-609. This provision provides that "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance" U.C.C. §

6

2-609(1); *see also Norcon Power Partners v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 660 (N.Y.1998).  Only if the party from whom such assurances are sought fails to provide them in a timely manner will the contract be considered repudiated, thus allowing the insecure party to disavow it.  *See* U.C.C. § 2-609(4).

Under this standard RPI's third claim must fail.  RPI's contention that it had cause for insecurity as to the appearance of its anticipated VectorShield seems to be based solely on the fact that an ostensibly similar shield at McGill University was less striking than that represented on the manufacturer's website.  (Pl. Ex. 5 at 77-80; Dkt. No. 38.)  However, no evidence has been submitted indicating that RPI correspondingly sought assurances from Varian due to its concerns in this regard.  As such, the court is left only to assume that RPI believes their concern as to the appearance of the VectorShield alone was enough to justify cancellation of the contract under the U.C.C.  Obviously, under § 2-609 this is incorrect, as written requests for assurance as to the shield's appearance must have gone unanswered in order for RPI's concern to metastasize into Varian's breach.  *See, e.g., In re Beeche Systems Corp.*, 164 B.R.12, 17 (N.D.N.Y. 1994) (finding contract wrongfully terminated, in part, because assurances

7

were not sought to allay insecurities as to other party's performance). Thus, RPI's third cause of action is dismissed.

Turning to the fourth claim, RPI's project manager for the construction of the biotechnology building, Oleh Turczak, became concerned about the size of the VectorShield when he reviewed website specifications indicating that the shield needed 22 feet of space, while the allotted space in the prospective building was only 21 feet. (Pl. Ex. 5 at 50, 77-78; Dkt. No. 38.) RPI then sought assurances from Varian that the system would fit. *Id.* at 58, 78. Although there is evidence that Varian was not responsible for the system's site preparation, Chris Jones of Varian nevertheless examined the allotted space and provided a scale drawing showing that the NMR system would indeed fit in its anticipated placement. *Id.* at 57-58. He further raised the possibility of Varian delivering an actively shielded magnet for the NMR system, which would have obviated the need for the VectorShield altogether. (Pl. SMF. ¶¶ 31,32; Dkt. No. 31.)

While RPI claims that these assurances were not adequate because requested unit specifications were not provided by Varian, the record evidence tells a different story. Though Turczak apparently remained skeptical, various emails and notes to Chris Jones and among RPI officials

8

involved in the NMR project indicate that RPI was generally appeased by Varian's assurances that the system would fit. (See, e.g., Def. Exs. F, 58, 93; Dkt. No. 31.) Nevertheless, RPI inexplicably requested Varian stop production and cancelled the contract months later. (Def. Exs. 31, 32; Dkt. No. 31.) RPI has pointed the court to no evidence indicating that these actions were taken due to insufficient assurances or renewed insecurities as to the fit of the NMR system. Thus, RPI's fourth claim fails under § 2-609 and, accordingly, § 2-711. As such, it is dismissed.

Finally, RPI's fifth claim alleges that Varian breached its implied warranty of suitability for a particular purpose because it attempted to supply an NMR system which would not fit into RPI's allotted space, despite knowledge that RPI was relying on Varian to ensure that the system would fit. *See* N.Y. U.C.C. § 2-315. This claim must also fail, as the only evidence presented in support of the argument that the NMR system would not fit is Turczak's "concern" that it wouldn't. In light of the above discussion, and the substantial evidence acknowledging that the system would fit, such speculative concern is insufficient to create a triable issue of fact. Accordingly, RPI's fifth and final cause of action is dismissed.

## V. **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that RPI's motion for reconsideration (Dkt. No. 55.) is **GRANTED**; and it is further

**ORDERED** that on reconsideration Varian's motion for summary judgment is **GRANTED** insofar as it seeks dismissal of RPI's complaint; and it is further

**ORDERED** that the judgment in favor of the defendants (Dkt. No. 50.) is **AFFIRMED**.

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties.

**IT IS SO ORDERED.**

June 26, 2008
Albany, New York

Gary L. Sharpe
U.S. District Judge